FILED IN THIS OFFICE
AUG 21 2026
Clerk U.S. District Court Greensboro, N.C.
BY

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

**CLAUDIA YAMILETH IRAHETA SANCHEZ,**
Plaintiff,

v.

**WESTROCK SERVICES, LLC,**
d/b/a SMURFIT WESTROCK,
Defendant.

Case No. 1:26CV861

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Claudia Yamileth Iraheta Sanchez, proceeding pro se, brings this employment discrimination and retaliation action against Defendant WestRock Services, LLC, doing business as Smurfit WestRock, and alleges as follows:

## I. PARTIES

1. Plaintiff Claudia Yamileth Iraheta Sanchez is a resident of Burlington, Alamance County, North Carolina. Plaintiff is Latina/Hispanic and of Salvadoran national origin.

2. Plaintiff worked at the Smurfit WestRock facility located at 7411 Oakwood Street Extension, Mebane, North Carolina 27302.

3. Plaintiff's payroll records identify her employer as WestRock Services, LLC. Plaintiff's EEOC charge and Notice of Rights identify the respondent as Smurfit WestRock. Plaintiff therefore names WestRock Services, LLC, doing business as Smurfit WestRock, as Defendant.

## II. JURISDICTION AND VENUE

4. This action arises under Title VII of the Civil Rights Act of 1964, including its protections against discrimination based on race and national origin and retaliation for opposing unlawful employment discrimination, 42 U.S.C. §§ 2000e et seq.

5. This action also arises under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 et seq.

6. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

7. Venue is proper in the Middle District of North Carolina because the employment at issue and the events giving rise to this action occurred in Mebane, Alamance County, North Carolina.

## III. FACTUAL ALLEGATIONS

8. Plaintiff began working at Smurfit WestRock on September 15, 2025, in Quality Assurance on the night shift. Plaintiff was within her initial 90-day probationary period when Defendant terminated her on December 4, 2025.

9. Defendant later represented in a December 9, 2025 termination letter that its attendance policy required newly hired employees to complete a 90-day probationary period and that an employee who reached or exceeded three attendance points during that period would be terminated.

10. During her employment, Plaintiff became concerned about what she believed was mistreatment of Hispanic employees.

11. Plaintiff assisted a Hispanic coworker who asked for help translating and accompanied that coworker when she raised a workplace concern with management.

12. Plaintiff also raised concerns regarding another Hispanic coworker's treatment and learned that multiple Hispanic employees were afraid to report workplace concerns because of fear of retaliation and language barriers. Plaintiff encouraged employees to report concerns to Human Resources and raised concerns to management about what she believed was discriminatory treatment.

13. Beginning on or about November 21, 2025, Plaintiff made formal workplace complaints to management. On December 1, 2025, Plaintiff submitted a written complaint to Human Resources. Human Resources responded that management had already communicated with HR regarding Plaintiff's earlier complaint and that the situation was being evaluated.

14. On December 1 and December 2, 2025, Plaintiff also reported workplace safety and quality-compliance concerns. Those reports form part of the factual context surrounding the escalation of workplace conflict. Plaintiff's Title VII retaliation claim is based on her opposition to what she reasonably believed was discriminatory treatment and her assistance to Hispanic coworkers.

15. On the morning of December 3, 2025, Plaintiff met with her QA Supervisor and explained that the recent workplace incidents had caused significant stress and that she had not slept since December 2.

16. Later on December 3, 2025, Plaintiff texted her QA Supervisor that she still had not slept and did not feel safe working a scheduled 12-hour night shift without sleep. The supervisor acknowledged in writing that Plaintiff had gotten little to no sleep but stated that the attendance policy still applied.

17. Plaintiff followed Defendant's call-out procedure and reported that she would not be able to work the December 3 night shift.

18. On December 4, 2025, Plaintiff sought emergency medical treatment related to acute stress and severe sleep deprivation and received medical documentation concerning her condition and return to work.

19. On December 4, 2025, Defendant terminated Plaintiff. During the termination communication, Plaintiff informed management that she had received emergency medical care and had medical documentation concerning her return to work.

**Attendance Policy and Application**

20. In its December 9, 2025 letter, Defendant stated that Plaintiff had accumulated seven attendance points during the probationary period. The same letter stated that reaching or exceeding three points during probation required termination.

21. The same letter assigned Plaintiff 1.5 points for September 29, 2025 and 1.5 points for October 13, 2025. Thus, according to Defendant's own stated point totals, Plaintiff had reached three points by October 13, 2025.

22. Defendant did not terminate Plaintiff on or about October 13 when she first reached the stated three-point threshold. Instead, Defendant continued Plaintiff's employment for

approximately seven additional weeks and continued assessing later attendance points before terminating her on December 4, 2025.

23. The December 9 letter also assigned 1.5 points for October 30, 2025 based on an alleged absence and failure to use the call-out procedure.

24. Plaintiff did not miss the October 30 shift. She secured transportation, reported to work at approximately 6:55 p.m. on October 30, completed the overnight shift, clocked out at approximately 7:03 a.m. on October 31, and was paid for the work. Her payroll record for the week of October 26 through November 1, 2025 shows 40 regular hours plus overtime.

25. The termination letter also assigned two separate 0.5-point entries on November 24, 2025 for failure to clock in and failure to clock out because Plaintiff did not have her badge. Those entries were timekeeping issues rather than an absence from work.

26. The termination letter assigned 1.5 points for Plaintiff's December 3, 2025 call-out for lack of sleep, even though Plaintiff used the required call-out line and had already informed her supervisor that she had not slept and did not feel safe working the 12-hour shift.

27. Earlier in Plaintiff's employment, management had exercised discretion regarding attendance and told Plaintiff, in connection with a transportation issue, that she could be removed from the schedule without receiving attendance points.

28. Plaintiff was also told by her trainer during her employment that longer-tenured employees were subject to a higher attendance-point threshold and could remain

employed with more points than employees in the 90-day probationary period. Plaintiff does not presently know the identities, exact point totals, supervisors, or circumstances of those employees; those matters are within Defendant's employment records and may be clarified through discovery.

29. Plaintiff's termination occurred only days after her written Human Resources complaint, additional workplace complaints, opposition to what she believed was mistreatment of Hispanic employees, and assistance to Hispanic coworkers.

30. Based on the timing of the termination, Defendant's decision to continue employing Plaintiff after she had already reached the three-point threshold stated in its later letter, the disputed October 30 attendance entry, and the evidence that attendance decisions involved management discretion, Plaintiff alleges that Defendant's attendance explanation was applied inaccurately or inconsistently and was a pretext, in whole or in part, for retaliation and unlawful discrimination.

31. At the time of the December 3 and December 4 events, Plaintiff was experiencing acute stress and severe insomnia or sleep deprivation that substantially affected sleeping. Plaintiff informed management of the condition, her inability to safely work the December 3 shift without sleep, and her emergency medical treatment and documentation.

32. Plaintiff alleges that she was otherwise qualified to perform the essential functions of her Quality Assurance position and that Defendant took adverse action because of an actual or perceived impairment, to the extent supported by the evidence and discovery.

33. After the termination, Plaintiff's condition worsened and she required additional medical treatment and hospitalization.

## IV. CLAIMS FOR RELIEF

34. Count I - Title VII Retaliation. Plaintiff incorporates the preceding allegations. Plaintiff engaged in protected activity by opposing what she reasonably believed was discriminatory treatment of Hispanic employees and by assisting Hispanic coworkers in communicating workplace concerns. Defendant knew of that activity. Defendant terminated Plaintiff shortly after the protected activity. Plaintiff alleges that the termination and the application of the attendance policy were caused, at least in part, by retaliation.

35. Count II - Title VII Race and National-Origin Discrimination. Plaintiff incorporates the preceding allegations. Plaintiff is Latina/Hispanic and of Salvadoran national origin. Plaintiff alleges that Defendant subjected her to unequal terms or conditions and terminated her under circumstances, including her complaints concerning treatment of Hispanic employees and the disputed or discretionary application of the attendance policy, that support an inference that race and/or national origin was a motivating factor.

36. Count III - ADA Disability or Regarded-As Disability Discrimination. Plaintiff incorporates the preceding allegations. Plaintiff alleges that she had an impairment involving acute stress and severe insomnia or sleep deprivation that substantially limited sleeping, and/or that Defendant regarded her as having an impairment after she disclosed her condition, inability to safely work the scheduled shift without sleep, emergency

medical treatment, and medical documentation. Plaintiff alleges that she was otherwise qualified and that disability or perceived disability was a factor in the termination.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

37. Plaintiff filed an EEOC Charge of Discrimination concerning Defendant on May 28, 2026. The charge was assigned Charge No. 435-2026-01387 and alleged race, national-origin, disability, and retaliation discrimination.

38. The EEOC issued a Determination and Notice of Rights on June 3, 2026. Plaintiff received the Notice on June 3, 2026. The Notice states that the EEOC made no determination about whether further investigation would establish a violation and that the dismissal does not mean the claims have no merit.

39. This action is being filed within 90 days of Plaintiff's receipt of the EEOC Notice of Rights.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on the claims proven at trial;

B. Award back pay and lost employment benefits in an amount to be proven, based on Plaintiff's WestRock compensation, including applicable overtime and shift differential, less appropriate offsets for interim earnings;

C. Award compensatory damages for emotional distress and other proven losses, subject to applicable statutory limits;

D. Award punitive damages to the extent permitted by law and supported by the evidence, subject to applicable statutory limits;

E. Award appropriate equitable relief, including front pay or other relief the Court determines appropriate;

F. Award prejudgment and post-judgment interest where permitted, taxable costs, and any other recoverable expenses; and

G. Grant any additional relief the Court determines to be just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VIII. SIGNATURE

Date: August 21, 2026

______________________________________

Claudia Yamileth Iraheta Sanchez, Pro Se
1929 Morningside Dr., Apt. 108
Burlington, NC 27217
Telephone: 336-287-4425
Email: yamilethsanchez96@gmail.com

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## CHARGE OF DISCRIMINATION

EEOC Form 5A (October 2017)

For Official Use Only – Charge Number: 435-2026-01387

| | |
|---|---|
| **Personal Information** | First Name: Claudia MI: Y Last Name: Iraheta Sanchez<br>Address: 1929 morningside dr Apt.: 108<br>City: Burlington County: State: NC Zip Code: 27217<br>Phone: 3362874425 Home ☐ Work ☐ Cell ☐ Email: YAMILETHSANCHEZ96@GMAIL.COM |
| **Who do you think discriminated against you?** | Employer ☒ Union ☐ Employment Agency ☐ Other Organization ☐<br>Organization Name: SMURFIT WESTROCK<br>Address: 7411 oakwood st Suite:<br>City: Mebane State: Nc Zip Code: 27302 Phone: 9143040300 |
| **Why you think you were discriminated against?** | Race ☒ Color ☐ Religion ☐ Sex ☐ National Origin ☒ Age ☐<br>Disability ☒ Genetic Information ☐ Retaliation ☒ Other ☐(*specify*) |
| **What happened to you that you think was discriminatory?** | **Date of <u>most recent job action</u> you think was discriminatory:** 12/04/2025<br>**Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate).**<br>(Limit 1,250 characters.)<br>I was terminated on December 4, 2025 for alleged attendance violations. I believe this reason was a pretext for retaliation after I reported harassment, unsafe working conditions, QA compliance concerns, and mistreatment of Hispanic employees. On December 3, 2025, I told my supervisor I had not slept, was under severe stress, and did not feel safe working a 12-hour shift. I followed the call-out procedure and was terminated the next day. I also believe at least one attendance entry used against me was inaccurate because I worked that shift. Within two days after termination, I was hospitalized after continued lack of sleep and a serious mental health episode. I believe this involved retaliation, national origin/ethnicity, and disability-related discrimination. |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br><br>**Signature:** Claudia Iraheta Sanchez (May 28, 2026 20:12 EDT) **Date:** May 28, 2026 |

Tuesday, June 2, 2026

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5A, Charge of Discrimination, Issued October 2017.

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of rights under the Act.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION


**Greensboro Local Office**
1500 Pinecroft Road,, Suite 212
Greensboro, NC 27407
(336) 604-5180
Website: www.eeoc.gov


## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/03/2026

**To:** Claudia I. Iraheta
1929 Morningside Drive 4
Burlington, NC 27217

Charge No: 435-2026-01387

EEOC Representative and email: Angela Radcliffe
Equal Opportunity Investigator
Angela.radcliffe@eeoc.gov

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 435-2026-01387.

On behalf of the Commission,

*for* Angela Radcliffe

Ingrid Waden-Wynn
Local Office Director

**Cc:**
Smurfit Westrock
7411 Oak Wood Street
Mebane, NC 27302

Please retain this Notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 435-2026-01387 to the District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 435-2026-01387 to the District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.